## FERRELL v. WISWELL et al.

### No. 2510.   Decided October 6, 1914 (143 Pac. 582).

1.  DEEDS—SETTING ASIDE—ACTIONS—EVIDENCE—SUFFICIENCY.   In a suit to set aside a conveyance on the ground that it was procured by fraud, evidence *held* insufficient to show that it was so procured.  (Page 205.)

2.  DEEDS — SETTING ASIDE — ACTIONS — BURDEN OF PROOF — SUFFICIENCY.   A party seeking to set aside a conveyance on the ground of fraud has the burden of proving it by clear evidence. (Page 206.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

Action by W. Ferrell against Frederick A. Wiswell and others.

Judgment for defendants.   Plaintiff appeals.

AFFIRMED.

*Moyle & Van Cott* for appellant.

*J. D. Pardee* for respondents.

FRICK, J.

On the 17th day of March, 1906, the plaintiff, hereinafter called appellant, commenced this action in the District Court of Salt Lake County against the defendants Wiswell, Ball, Clark, and Onasch, hereinafter styled respondents, to set aside a deed whereby appellant conveyed a certain parcel of

land of about five acres, with a water right to the respondent Clark for the use and benefit of himself, said Wiswell, Ball, and others, who were their associates. The deed was executed on the 25th day of September, 1905, and appellant alleged that it was obtained through misrepresentation, fraud, and deceit practiced on him by the respondents Wiswell, Ball, and Clark. It was also alleged that the respondent Onasch had purchased said land from said Clark after the conveyance aforesaid, but with full knowledge of appellant's rights in the premises. The respondents Wiswell, Ball, and Clark answered the complaint, denying the allegations of misrepresentation, fraud, and deceit, and the respondent Onasch denied the same upon the ground of lack of information or knowledge sufficient to form a belief, and claimed the land as an innocent purchaser, and asked that the title thereto be quieted in her. The case, for some reason not explained, remained pending in the district court without trial until the 15th day of September, 1912, when it was tried to the court without a jury. On the 24th day of October following the court made its findings of fact and conclusions of law in favor of the respondents, and entered judgment dismissing the complaint as against all of them, and also entered judgment quieting the title to the land in question as against the appellant in the respondent Onasch. The court found both affirmatively and negatively upon every issue presented by the pleadings and raised by the evidence. In view that the findings are very long we shall not set them forth here, nor could it subserve any practical purpose to do so. It must suffice to say that the court expressly found that no deceit, fraud, or misrepresentation of any kind was practiced by any one upon appellant in obtaining the deed in question, and that he executed the same voluntarily and for an adequate consideration. Appellant's counsel, however, vigorously assail the findings and conclusions of law, and insist that the findings are contrary to and are not supported by the evidence, and that the conclusions of law and judgment are erroneous.

It appears from the evidence that the inducement and consideration for making the deed in question, in brief, are

as follows: Wiswell was the inventor of what is called a pulsatory concentrator which was considered to be an improvement in concentrating machinery used in separating and concentrating the minerals from the gangue matter in the crude ores. Mr. Wiswell had an application pending for a patent for said concentrator at the time, and a corporation was in contemplation which was to be organized by Wiswell, Ball, Clark, and others, including appellant. The corporation was to manufacture the concentrator, and perhaps also place it in use upon ores or mineral sands, as well as to sell rights to use and manufacture the concentrator. The parties aforesaid needed money to pay the expenses of incorporating and for the purpose of manufacturing and placing the invention upon the market, and appellant, for the purpose of obtaining money by selling said land, deeded the same to Clark for the consideration of $1,600, which was to be paid to him as follows: 4,000 shares of the capital stock of the proposed corporation when it should be incorporated, which stock was assumed to be worth twenty-five cents a share, $500, which was to be paid to one Neff who held a first mortgage for that amount on the land in question, and an additional $100 was to be paid to appellant in thirty days after the deed was executed. In addition to the foregoing he was also to receive fifty dollars a month as an employé of the proposed corporation for a period of one year. The foregoing terms and conditions were incorporated into a written contract, which was entered into between Wiswell, Ball, and Clark on the one hand, and appellant on the other, on the day the deed was executed, and in which contract the deed is mentioned. The land was thereafter sold for $1,400 by Clark to the respondent Onasch, and the mortgage was paid off and the other money was used by the company, but no part thereof was paid to appellant. It also appears from the record that in passing upon the evidence after the conclusion of the trial the District Judge made the following observation:

"I shall not undertake to discuss in detail the evidence in this case, but after having carefully considered it, I am unable to reach a conclusion that the plaintiff has established

his case by a preponderance of the evidence. I am impressed with the fact that he, like many others, and like the defendants themselves, was probably carried away by visions of great wealth from selling a patent right. It is not the first time that a credulous human nature has been caught in that pitfall. I have no doubt that he actually executed the deed and acknowledged it and I am forced to the conclusion that he must have known what it was.  *  *  *  Clark, Wiswell, and Ferrell all alike were so infatuated with the prospects held out by the will-o'-the-wisp they were following that none of them acted with any judgment.''

The evidence is all preserved in a bill of exceptions containing about 1,200 folios, all of which we have carefully examined and considered, and, after doing so, are forced to agree with the District Judge's conclusions. **1** It may be conceded that if the testimony of the appellant were alone considered or given full credence, the result should be different, but when the testimony of all the witnesses is considered and is given its proper effect, the result arrived at by the trial court is not only the proper one, but, in our opinion is in accordance with the weight of the evidence when considered as a whole. It is entirely impractical to set forth the evidence in detail and merely to quote excerpts or to give mere outlines thereof could subserve no useful purpose. It must suffice to say, therefore, that at the time the deed in question was executed, and when the alleged fraud and deception were practiced upon appellant as testified to by him, there were four other persons present, namely, Wiswell, Ball, Clark, and the latter's daughter. The testimony of two of those, namely, Mr. Wiswell and Mr. Ball, is in the record, and if their testimony is to be believed—and we could discover no reason in the record why the court should not have given it credence—then there was no deceit, fraud, or misrepresentation of any kind practiced upon the appellant. The notary public before whom the deed was acknowledged also testified on cross examination that while she did not recollect the particular transaction in question, yet she knew that she never took an acknowledgment of any person without directing his attention to the instrument he was

about to acknowledge, and by asking him whether he exe-
cuted the same. Miss Clark, who was a subscribing witness
to the deed, did not testify, but why she did not is not made
to appear; but the reason why her father did not do so was
because, as appears from the record, he had died before the
case reached trial. Several years before the trial he had
removed from Utah to California. As the trial court re-
marked, no doubt all of the parties to the transaction involved
here were disappointed in both the real value of Wiswell's
invention and in the results which it achieved as a concen-
trator of minerals. While the disappointment may have been
gross and the effect disastrous upon all who invested money
in the enterprise, yet that fact, standing alone, does not
amount to either fraud or deceit, and cannot support an
action to set aside a deed given for the purpose of furthering
the unfortunate enterprise. We remark that we have no
doubt whatever that appellant's counsel feel convinced that
their client was defrauded and deceived. We must confess,
however, that a reading of the evidence does not convince
us that such was the case.

We have no right to overlook the wholesome rule that
where deeds or contracts are sought to be vacated and set
aside upon the ground of fraud and deceit, the burden
of proving the alleged fraud is upon him who asserts
it; moreover, that the fraud must be established by
clear and convincing evidence. While fraud need not neces-
sarily be established by direct evidence, yet from all the evi-
dence, whether direct or circumstantial, it must be made to
appear with reasonable clearness that the act in question was
induced by fraud or deceit in order to authorize relief in an
action of this kind.

Counsel for appellant also strenuously insist that under
the law Mrs. Onasch was not an innocent purchaser of the
land in question, and that the court erred in holding that
under the facts she was such. In view that we have reached
the conclusion that the evidence is insufficient to establish
fraud or deceit, the question of whether or not Mrs. Onasch
was an innocent purchaser becomes immaterial, and therefore

extrajudicial so far as this case is concerned. For that reason we express no opinion upon that question.

For the reasons hereinbefore stated the judgment must be affirmed, with costs. Such is the order.

McCARTY, C. J., and STRAUP, J., concur.